EXHIBIT A

RECEIVED MAY 1 8 1993

# BRICKLAYERS AND ALLIED CRAFTSMEN
## LOCAL NO. 45

### BUFFALO, NEW YORK

## LABOR AGREEMENT



# 1993 – 1996

## AGREEMENT ENTERED INTO BY AND BETWEEN

## TILE, MARBLE AND TERRAZZO CONTRACTORS OF BUFFALO

## AND

## TILE, MARBLE AND TERRAZZO FINISHERS
## SUBORDINATE UNION NO. 45

716-873-1141-1142

1807 ELMWOOD AVENUE, BUFFALO, NEW YORK 14207

This Agreement has been negotiated by and between the Tile, Marble and Terrazzo Contractors of Buffalo, hereinafter referred to as the Employer, and the Tile, Marble and Terrazzo Helpers Subordinate Union No.45 Buffalo, New York, of the International Association of Marble, Stone and Slate Polishers, Rubbers and Sawyers, Tile Marble Setters Helpers and Terrazzo Workers Helpers, hereinafter referred to as the Union.

The parties, hereto, agree to all provisions of the following agreement and so pledge and bind their respective organizations to a strict observance of this contract.

## ARTICLE I

### Working Conditions

1. Eight (8) hours will constitute a day's work Monday, Tuesday, Wednesday, Thursday, Friday, beginning at 8:00 A. M. to 12:00 Noon and from 12:30 P. M. to 4:30 P. M.

2. All Helpers and Grinders shall be paid not later than 4:30 P. M. on each and every Friday for all work, labor or services rendered for the preceding week.

3. In case a Helper or Grinder is laid off, he must be notified one-half (1/2) hour before quitting time, and paid in full not later than quitting time. Failure of Employer to notify Helper of lay-off one-half (1/2) hour before quitting time, or to pay wages by quitting time, will obligate the Employer to continue the Helper in his employ another half day, or to pay equivalent for waiting time. Men coming from out of town and working on board jobs may be paid one hour later, excepting when laid off.

4. All Employers shall pay wages at the specified times provided for herein. All hours worked and all payroll deductions must be itemized on a detachable check stub or payroll envelope stub which can be retained by the Employee for his records.

5. It is hereby agreed that, on a tile job which is manned by an equal number of Setters and Helpers it shall be the duty of any and all of the Helpers to perform all such work connected with the tile contract as may be directed by the Foreman or Employer. A failure to abide by this Article will be construed as a violation of this Agreement.

6. Tile Helpers shall do all the cleaning and grouting of tile, unpack all tile and shall handle all materials such as sand, cement, lime, tile and all there is that may be used by the tile layers after being delivered on the job.

7. Marble Helpers shall do all the pointing, cleaning, grouting and handling of all materials used by a Marble Setter after being delivered on the job.

8. Terrazzo Helpers shall do all the mixing of cement, terrazzo chips and sand and handle all materials used by the Terrazzo Layer after being delivered on the job.

9. Terrazzo Grinders shall do all the grinding, polishing, grouting and waxing on all Terrazzo put down by the Terrazzo Mechanic.

10. The jurisdiction of the Union also includes all unloading and handling of materials, such as: tile, marble, terrazzo, cement, etc. Those Employees covered under Marble Shop Agreements may utilize Employees under such Agreement for the unloading and handling of these materials, as well as utilizing Employees covered under this Agreement.

11. At no time will a Mechanic be allowed to do any of the above-mentioned work. If the Employer allows a Mechanic to perform Helper's or Grinder's work for any reason, it will be considered a breach of this Agreement.

12. Stewards shall be allowed reasonable time to perform their duties on the job.

13. All workmen shall receive the wages specified herein and shall work under the conditions of this Agreement.

14. It is mutually agreed that the Employer shall have the privilege of naming men to take the place of Improvers sent out each year.

15. When Helpers, Grinders or Improvers work any overtime during the normal work week and/or on Saturday, they shall be paid at the rate of time and one-half. When Helpers, Grinders or Improvers work Sundays or Holidays, as defined in this Agreement, they shall be paid double time.

16. No Helpers, Grinders or Improvers shall be required to report to the Shop at night for orders after hours and not before 7:30 A. M.

17. The Employer shall not request a Helper, Grinder or Improver to report to the Shop from a job unless the Helper, Grinder or Improver is to be sent to another job or remain in his employ. If a Helper, Grinder or Improver is asked to report to the Shop and is not sent out to work, he shall be paid in full immediately and be given a "lay-off slip" recognized by the New York State Unemployment Office.

18. Any new material used by the Tile, Marble and Terrazzo Employers signed to this Agreement shall be assigned in accordance with the Impartial Jurisdictional Disputes Board procedural rules. In addition to the work usually and customarily performed by Tile, Marble and Terrazzo Helpers Local Union 45 within its craft jurisdiction, the Union further claims the handling of all material used for Composition Terrazzo, Terrazzo and Mosaic work, hand or precast. Dex-o-Tex, Latex, Magnesite, Monolithic, Epoxy, Nealtex, Matrix, Polyester and all new types of terrazzo floors as a result of research and development, new materials and processes being introduced in the Terrazzo Industry that use marble chips, or that have to be ground or sanded, with the exception of Torginol, shall be considered the same as Terrazzo. Preparing, mixing and distributing, with shovel, rake or hoe, all kinds of concrete and foundations necessary for Composition Terrazzo, Terrazzo and Mosaic work, all scratch coat used for such purposes, and substitutes therefore, or any composition used for such purposes, also rubbing, grinding, cleaning and finishing same by hand or machine and such work listed as Composition Terrazzo, Terrazzo and Mosaic Helpers work. The inclusion of this work which has been added to this Agreement shall not be construed as adding to, establishing or creating jurisdiction of work nor shall such inclusion determine any work assignments; nor shall such addition in any way change the interpretation or application of any other sections of this Agreement also contained in any agreement between the parties hereto prior to the effective date of this Agreement.

19. The Employer will be required to notify, in writing, the business agent of Tilesetter Helpers Local 8 at least two (2) weeks prior to the start of a sizeable job.

20. The Employer is to furnish suitable pails and sponges to the Helpers, Grinders and Improvers and they shall be held strictly accountable for the return of such pails and sponges.

-3-

## ARTICLE II

### Wages

The wage rate for the Tile, Marble and Terrazzo Finisher will be as follows:  The Grinder and Epoxy classifications shall be ten cents ($.10) additional to the below schedule.

Effective June 1, 1993, the wage rate for the Tile Workers Local 45 Finisher will be Sixteen Dollars and Fifty-nine Cents ($16.59) per hour, less Four Percent (4%) per hour dues checkoff, as outlined in Article IV.  In addition to the above, there will be an Employer contribution in the amount of Three Dollars and Ninety Cents ($3.90) per hour to the Tile Workers Local 8 Trust Fund (hereinafter called Trust Fund), as outlined in Article V.  There will be, in addition, an Employer contribution of One Dollar and Eighty-seven Cents ($1.87) per hour to the Tile Workers Local 8 Pension Trust Fund (hereinafter called Pension Fund), as outlined in Article V.

Effective June 1, 1993 there will be no increase in the fringe package. Effective June 1, 1994, the total fringe package shall be increased by Five Cents ($.05) and effective June 1, 1995 by an additional Ten Cents ($.10).  This money will be put into the International Masonry Institute Fund.

## ARTICLE III

### Improver Category

The Employer will have the right to employ new hires as an Improver on a company-wide basis, based on a ratio of two (2) Journeymen Tilesetter Finishers to one (1) Improver (2:1).  New hires are those employees not currently members of Tilesetter Finisher Local 45.  The Improver shall be the first to be laid off.  The Employer shall have the right to transfer an Improver to another job that fulfills the requirement of the 2:1 ratio.

The base rate for the Improver will be Eight Dollars and Sixty Cents ($8.60) per hour plue fringe benefits for the first one thousand (1,000) hours of covered employment.

On completion of the first one thousand (1,000) hours of covered employment, the Improver will then receive a base rate pay of Ten Dollars and Sixty Cents ($10.60) per hour plus current fringe benefits.

On completion of the second one thousand (1,000) hours of covered employment, he will then be employed as a Journeyman Tilesetter Finisher and be paid commensurate with the Journeyman's base rate and fringes.

Employees who are hired under the Improver category will be subject to the Employers's Recall List, as outlined in Article XIV, Sections B and C, and the Union's Security Clause, as currently contained in this Agreement.  The Employer will be required to notify the Union office immediately on hiring an Improver.

## ARTICLE IV

### Deduction of Union Dues

The Employer shall deduct from the hourly wage rate the sum of 4% of the gross wages per hour for each hour paid to all employees and Five Cents ($.05)

-4-

which should be paid to the International Masonry Institute. This deduction will continue for the life of the contract. The employer shall make these deductions from each premium hour worked by the employees covered under this Agreement from the pay of each employee who signs the authorization form annexed hereto, authorizing such deduction and remit the same to the Tile, Marble and Terrazzo Finishers Subordinate Union No. 45. A statement showing the deductions should be sent directly to Manufacturers and Traders Trust Company, One M&T Plaza, Buffalo, New York 14240.

Should the Union desire to raise the amount of the dues check-off deduction during the term of this Agreement on any anniversary date, it shall notify the Employer in writing at least sixty (60) days prior to such anniversary date.

On or before the 7th of the month following the close of the preceding month's payroll, each Employer will list all of his employees covered under this Agreement, the hours paid to each, and will remit, together with a check in the amount of the total deductions withheld from the wages of the employees, pursuant to such authorization, to Manufacturers and Traders Trust Company, One M&T Plaza, Buffalo, New York 14240.

The Tile, Marble and Terrazzo Workers Finishers Local Union No. 45 agrees to hold all authorization cards obtained by it from the employees covered by this Agreement and shall, upon request, affirm to any interested Employer the fact that such an authorization card is being held by it. Upon revocation, if any, the Union shall promptly notify the Tile, Marble and Terrazzo Contractors of Buffalo, New York, in writing of the name of the employee and the date of the revocation.

The Union shall indemnify and save the Employer and/or the Tile, Marble and Terrazzo Contractors of Buffalo, New York, harmless against any and all calims, demands, suits, or other forms of liability that shall arise out of or by reason of any action taken by the Employer for the purpose of complying with the provisions of this paragraph or on reliance of any list, notice, assignment or authorization card furnished under such provision.

## ARTICLE V

### Trust Funds

1. The Employer and Union have agreed to create and establish jointly trusteed benefit funds, the Tile Workers Local 8 Trust Fund (S.U.B. and Health Care) and the Tile Workers Local 8 Pension Fund, which shall conform to the requirements of Section 301 of the Labor-Management Relations Act. Those agreements and the provisions of the Declaration of Trusts and the contributions required thereunder shall be expressly conditioned upon obtaining a determination by the United States Treasury Department that the trust funds qualify under the appropriate sections of the Internal Revenue Code.

    A. In addition to the wage rates provided for herein, each signatory to this Agreement agrees that upon signing this Agreement, it has become a party in the same manner and binds itself to the terms and conditions of the respective Agreements and Declarations of Trust of the Tile Workers Local 8 Trust Fund and the Tile Workers Local 8 Pension Fund; as if said Trust Funds are fully to be considered as an Employer, as the same is defined, under each of the said Agreements and Declarations of Trust.

- 5 -

The parties and each other signatory to this Agreement empowers and authorizes the Trustees, to delegate in a prudent and lawful manner, the investment powers granted unto said Trustees by the said Agreements and Declarations of Trust. The delegation of such investment and reinvestment powers, to the extent that the Trustees deem desirable, may be delegated to any bank, trust company, investment advisor, financial investment and management institution and/or investment institutions provided they are registered with the Securities and Exchange Commission under the Investment Advisors Act and with the respective New York State Insurance or Banking Department.

In such delegation of investment authority or power, by way of specification and not limitation, the authority to invest and reinvest the assets of the Trust of such Funds on a discretionary basis or otherwise, and the Trustees may enter into such Agreements in connection therewith, with any such party so selected, and provided such Agreements shall be revocable by the Trustees at any time.

## Contributions

2.   A.   Trust Fund contributions shall be in addition to basic wage rates set forth in Article II of this Agreement. Effective June 1, 1993, subject to the conditions set forth herein, the Employer will contribute to the Trust Fund on the basis of Five Dollars and Seventy-seven Cents ($5.77) per hour for each hour paid to the Employees covered by this Agreement.

B.   Should the Union desire to designate a portion of the basic wage rate for the purpose of increasing the Benefit Funds' contribution during the term of this Agreement on any annual anniversary date, it shall notify the Employer, in writing, at least sixty (60) calendar days prior to such anniversary date, in which event the wage rate shall be adjusted to reflect such change, the amount then allocated to the Benefit Funds no longer to be part of the basic wage rate, and the amended contribution rate and the amended basic wage rate shall then become effective on such anniversary date.

C.   Contributions shall be paid to the Benefit Funds on or before the seventh (7th) day of the month following the month in which the work was performed by the Employee. Failure to contribute as specified or as otherwise directed by the Trustees, shall automatically without notice result in the Employer being classified as delinquent. Such classification shall continue automatically without notice until such time as any and all contributions are completely brought up to date and accepted by the Trustees.

D.   Any Employer classified as "delinquent" shall pay six percent (6%) per month compounded on all unpaid contributions during the period of such delinquency and shall, during the period of such delinquent classification, be liable to all of his Employees or their assigns for all claims or benefits under the Benefit Funds to which the given Employee would have been entitled but for failure to contribute, but in no event shall any Employee be entitled to recover against a delinquent Employer if benefits are paid under the Benefit Funds, provided further, that the Trustees shall be the sole judge of whether or not benefits shall be paid under the Benefit Funds.

3.   The Employer bound by this Agreement authorizes the Association to designate the Employer Trustees of the Benefit Funds, waiving all notice thereof.

4. The terms of the Trust shall be determined by mutual agreement of the Contractors and Union.

5. The Trustees of the Fund or their designated representative shall be allowed to check the payroll records of Employers at reasonable times at no charge to the Employer; but in the event it is found that the Employer has not been complying with its obligation to the Benefit Fund, the Employer shall pay all reasonable costs of checking the books by the Trustees and, in addition, shall be classified as delinquent, retroactively to the first date of such noncompliance, and shall be responsible to all of its Employees or their assigns for any and all claims of Employees who were not covered, as herein provided, in cases of delinquency, and must pay all deficiencies, plus six percent (6%) per month compounded.

6. Notwithstanding anything herein contained, in the event that any Employer is delinquent at the end of the periods provided within this Agreement in the payment of its contributions to the Benefit Fund, and notice of delinquency has been given to the Union by the Fund Office, then the Union, after providing the delinquent Employer with notice of such delinquency to said Fund shall thereafter take strike action against the delinquent Employer until such delinquent payments and penalties are paid. It is further agreed that in this event, the Employer shall be responsible to the Employees for loss of wages resulting from such strike action.

7. Should Employees covered by the Agreement suffer any loss of wages as a result of strike action taken by another recognized Building Trades Union and such strike action is in accordance with the terms of the Agreement of said Union to enforce the fringe benefit payments called for in their respective agreement, then the Employees covered by this Agreement shall be made whole on the basis of an eight (8) hour day, providing such Employees are on the payroll of the Employer who was delinquent in fringe benefit payments.

## ARTICLE VI

### Construction Industry Fund

### Section 1

Each Employer in contractual relationship with the Union, whether Association member or not, shall on or before the seventh (7th) day following the end of each calendar month pay to the Construction Industry Employers Association, Inc., fourteen cents ($.14) per hour for each hour paid during said calendar month for all Employees covered by this Agreement. Simultaneously with making a payment of this contribution, the Employer shall also file a written report with the Association setting forth:

A. The names and Social Security Numbers of the Employees covered by the Agreement who have been in the employ of the Employer during such calendar month.

B. The number of hours worked by each Employee during such calendar month.

Forms for making the above-required reports, as provided for in this Article, shall be furnished all Employers by the Association.

### Section II

The Association agrees to establish a Construction Industry Fund supported completely by Employer contributions, as set forth in Section I, such Fund to meet all costs and expenses on the part of the Association in connection with activities and programs in being or to be established, such as:

- 7 -

A.  The negotiation and administration of Collective Bargaining Agreements with Building Trade Unions with whom the Association is in contractual relationship.

B.  The negotiation, supervision and administration of all Funds and Plans provided for in this Collective Bargaining Agreement, such as Health and Welfare Funds, Pension Funds, Supplemental Unemployment Benefits, Vacation Funds, etc.

C.  The establishment and the administration of Apprenticeship Training Programs, Educational Programs and Safety Programs, and other programs which will benefit both the Employees and the Employers covered by this Agreement.

D.  The establishment and administration of Joint Arbitration Committees and to provide for further Arbitration Procedures should the Joint Arbitration Committees be unable to decide or resolve a dispute.

## Section III

A.  The Construction Industry Fund shall guarantee on behalf of Association members, as well as all other Contractors contributing into the Construction Industry Fund, payment of all Employer contributions and for all dues deductions from wages made or required to be made pursuant to provisions of this Agreement.  The guarantee by the Construction Industry Fund shall be in the total amount of $15,000.00 for any one Employer which shall cover defaults by Contractors of contributions into any and all Benefit Funds, as provided for in this contract and any default by the Contractors in making the required dues deductions from wages, as provided for in this contract. The Construction Industry Fund, if it so elects, may accomplish this responsibility by the payment of premiums for the necessary Surety Bond or Bonds.  It is intended by this paragraph to limit the liability of the Construction Industry Fund to a total sum not in excess of $15,000.00 for any one Employer delinquent to the Fund or Funds jointly administered by a particular Union or delinquent in making payment of dues deduction from wages for that particular Union.

B.  Should an Association member or non-member Employer, who contributes to the Construction Industry Fund, not submit contributions into the Benefit Funds or remit payment for dues or Savings Plan deductions, as required under the terms of this Agreement, by the fifteenth (15th) day from the end of the previous month during which contributions and payments accrue, he shall then automatically on that date be declared in default.

C.  The Trustees and/or the Union, as the case may be, shall provide to the Association a listing of those Contractors who are delinquent in making their payments as of the seventh (7th) day following the end of each calendar month. Those Contractors appearing on such listing, who do not remit payment by the fifteenth (15th) of that same month, shall be automatically declared in default on that date.  The Association, in conjunction with the Construction Industry Fund, will accept liability of such defaulting Contractors and will pay over the amount in default to the Trustees; or, in the event of Payroll Savings or Union dues deductions, the amount of default to the Union, immediately upon presentation of proof of the amount of such default.  For those Contractors so declared in default, the Union shall, in addition to any other remedies available to it, be released from any provision of this Agreement which restricts or delays its right to strike concerning such default.

D.  In addition to the above liability for Contractors defaulting in contributions to the Benefit Funds or to the Union for dues deductions from wages, it is further agreed that should it be found by the Trustees of the Benefit Fund concerned that there have been discrepancies in the amount of contributions made by a contributing

Employer and such Employer does not, upon due notice issued by the Trustees of the Benefit Fund rectify this discrepancy, then this amount shall also be underwritten by the Construction Industry Fund in conjunction with the Association, with the limitations, however, that the amount in discrepancy shall cover a period of no more than eight (8) months immediately prior to the notice issued by the Trustees of the Benefit Fund and further that such discrepancy shall not in conjunction with defaults in contributions or dues deductions exceed a total amount in default of $15,000.00. The limitation of eight (8) months provided for in this paragraph shall not apply to a labor organization which does not have office or bookkeeping equipment in operation which permits them to notify their members of the amounts of contributions made on their behalf and in the case of these organizations the amount in discrepancy may cover a period of no more than one year, with the understanding that when such labor organization does not have the necessary office and bookkeeping equipment in operation, the eight (8) months' limitation shall likewise apply.

E.  If an Employer, not a member of the Association, indicates to the Union a desire to sign this 1987-1990 Agreement, it is agreed that the Association shall be immediately notified in writing of such desire. The Association will within ten days after receipt of such notice, inform the Union whether it is willing or not to guarantee the payments of contributions or dues or Savings Plan deductions from wages, as described above, for this particular Employer. If a meeting is held in lieu of the written notice, the Association shall, at the conclusion of the meeting, inform the Union whether it is willing or not to guarantee the payments of contributions or dues or Savings Plan deductions from wages for this particular Employer. The Association's guarantee shall not be arbitrarily withheld. Refusal to gaurantee shall be based upon the reputation and the financial status of the Employer involved. If the Association declines to accept the guarantee of payments for such an Employer, the Union may then refuse to sign an Agreement with such Employer or may then impose such conditions upon such Employer as are necessary to guarantee the payments of the contributions and the dues and Savings Plan deductions from wages and, in any event, the Union shall obtain a Surety Bond or Bonds from the Employer by an insurance company authorized to do business in the State of New York in the amount of $15,000.00. The Union agrees, upon request, to provide to the Association a listing of those Employers who have provided the Union with the bonds.

If the Association advises the Union of its unwillingness to guarantee payment of contributions or dues or Savings Plan deductions, it shall, at the same time, notify other Unions having similar agreements of its unwillingness to guarantee the payments of the Union dues and Savings Plan payment and funds contained in the agreement of the other Unions, and shall not make such guarantee.

F.  Should the defaulting Employer be engaged by a Prime or General Contractor as a Subcontractor after the effective date of default, the Prime or General Contractor shall be financially responsible for payments by said Subcontractor of all contributions to the Benefit Funds and shall guarantee said Subcontractor's payments of all dues and Savings Plan deductions from wages, as are described in the contract, for the period that such Subcontractor is employed by the Prime or General Contractor.

G.  If the Construction Industry Fund is required to make payments to any of the Funds either by virtue of its own bonding or directly on behalf of a defaulting Employer, the respective Fund will assign to the Construction Industry Fund or to the Construction Industry Employers Association, Inc., it claim against the defaulting Employer.

In addition to all other legal obligations provided in this Agreement, a delinquent or defaulting Employer agrees:

- 9 -

(1)  To pay a service charge to the Construction Industry Fund equal to ten percent (10%) of the delinquent contributions; and in, addition

(2)  If the Construction Industry Fund or Association refers said delinquency to an attorney for collection, to pay to the Construction Industry Fund a sum equal to one-third (1/3) of the total delinquency which sum it is agreed, represents reasonable legal fees; and, in addition

(3)  To pay all costs of accounting services which are required to audit the Employer's books and records to ascertain whether the Employer has properly contributed to the Construction Industry Fund.

H.  If the parties, hereto, fail to agree upon a new agreement before the expiration date of this one, the provisions for payment to the Funds on behalf of delinquent Employers shall continue until a new agreement is consummated, provided, however, that such obligation shall be limited to delinquencies that have accrued prior to the expiration of this Agreement.

I.  When a Subcontractor, not a member of the Association and not in contractual relationship with the Union, is awarded work on a job by the Prime or General Contractor and, as a consequence, commences work on such job and the Association and/or the Construction Industry Fund refuses to guarantee the payments of contributions or dues deductions from wages, the General Contractor, if requested by the Union, shall be required to remove such Subcontractor from the job.  In lieu, however, of such removal, the General Contractor will accept full liability for the Subcontractor's contributions into Benefit Funds, the Construction Industry Fund and the dues deductions from wages, as prescribed by the contract.

J.  The Prime or General Contractor, if he engages or continues to engage such defaulting Employer as a Subcontractor, shall accept fully the responsibility for the payment of contributions to the Benefit Funds, the Construction Industry Fund and the Union dues and Savings Plan deductions from wages, as are described in the contract for the period that such Subcontractor is employed by the Prime or General Contractor.

### Section IV

A.  Anything herein contained to the contrary notwithstanding, there is specifically excluded from the purposes of the Construction Industry Fund the right to use any of its funds for lobbying in support of anti-labor legislation and/or to subsidize Contractors during periods of work stoppages or strike.

B.  The Executive Board of the C.I.E.A., in accordance with its By-Laws, shall be the sole administrator of the Construction Industry Fund.

C.  Contributions to the Construction Industry Fund shall be effective and commence as of June 1, 1987, and shall continue during the life of this Agreement.

D.  Should there be any termination of payments allocable to the Construction Industry Fund by reason of the expiration of this Agreement, or because of the absence of a contractual obligation upon the Employer to make payments so allocable, or for any other reason, the assets and funds of the Construction Industry Fund shall not be distributed among any Employers, or the Union, but shall be held by the Association which shall continue to administer and expend such assets and funds for the purposes as set forth herein and subject to the conditions as also provided herein.

## ARTICLE VII

### Foreman

1. When five (5) or more Helpers are employed on the same job, one shall be selected by the Employer to act as Foreman. The rate of working Foreman will be twenty-five ($.25) more than the Helpers' regular hourly rate. The rate of non-working Foreman will be ten cents ($.10) more than the Helpers' regular hourly rate.

2. Tile, Marble and Terrazzo Employers from outside of the Buffalo geographical jurisdiction must hire one (1) Helper from Local 45 as the Job Steward. Such Employer shall be allowed to bring in one key man; the balance of the Helpers, if needed, will come from Local 45 unless Local 45 cannot furnish Helpers or Grinders. Any Foreman on such job shall come from the ranks of Local 45.

## ARTICLE VIII

### Holidays

1. New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day and Christmas Day will be observed as holidays and no work shall be performed except in emergencies. Election Day shall be observed as a holiday in areas of the Local 45 geographical jurisdiction which honors Election Day as such.

2. When Helpers, Grinders and Improvers are working in localities outside the jurisdiction of the Union, as described herein, they must observe the holidays in that locality.

## ARTICLE IX

### Travel Expense

1. When Helpers, Grinders and Improvers are sent to jobs outside Erie County or the jurisdiction of Subordinate Union No. 45 they shall be paid all traveling expenses, board and lodging actually incurred. The board for Helpers shall be arranged between the Employer and Employee.

2. Travel expense shall be allowed to Helpers, Grinders And Improvers within the confines of Erie County at the rate of Fifteen Cents ($.15) per mile each way from the nearest point on the following boundary line to the job site, if the job is located outside that area bounded by the following:

Starting from the South Grand Island Bridge and River Road, thence southeasterly along Sheridan Drive extension to Sheridan Drive, then easterly along Sheridan Drive to Niagara Falls Boulevard, then north along Niagara Falls Boulevard to the intersection of Niagara Falls Boulevard and the New York Central Railroad tracks (adjacent to Ellicott Creek Park), thence east along the New York Central Railroad tracks to Transit Road, thence south on Transit Road to Big Tree Road, thence west on Big Tree Road to Lake Erie, thence north along the shore of Lake Erie and the east branch of the Niagara River to the point of origin, the South Grand Island Bridge.

3. Any member of the Union living outside the free boundary area and having to travel less than ten (10) miles to a job site outside of the boundary area shall not receive travel expense reimbursement. Those, however, living outside the aforementioned boundary and traveling more than ten (10) miles to the job site located outside the boundary area, shall receive the same travel expense as those

- 11 -

living within the boundary area, such expense to be computed at the rate of Fifteen Cents ($.15) per mile, each way, from the nearest point on the boundary line to the job, when the job is outside the boundary area. No travel expense shall be allowed to a member living outside the boundary area and traveling to a job located within the boundary area.

4. Further, those employees living outside the boundary area and in such areas as Jamestown, Batavia, Olean, etc., shall receive Fifteen Cents ($.15) per mile travel expense to the job and return when the employee is required to travel more than ten (10) miles from his home to the job site. Fifteen Cents ($.15) per mile will then be paid beyond such ten (10) mile radius of the man's home.

## ARTICLE X

### Downtown Parking

In the downtown area where free parking or on-street parking is not available, then the Employer, upon furnishing of a receipt, will pay the automobile parking fee for all Employees covered by this Agreement. Where the Employer chooses to furnish parking, such parking must be within a three (3) block area of the job site.

The downtown area is defined as that area within the following boundary: Elmwood Avenue north to North Street, east on North to Michigan Avenue, south on Michigan Avenue to Seneca Street, west on Seneca Street to Upper Terrace, northerly on Upper Terrace to Elmwood.

## ARTICLE XI

### Arbitration

1. The parties hereby agree that if any dispute arises on any of the terms of this Agreement during the life of same, there shall be no cessation, stoppage of work or lockout for any reason whatsoever, but such matters in controversy or dispute, if any, shall be immediately taken up by the representatives of the Tile, Marble and Terrazzo Contractors of Buffalo, New York, and the Union, with a view to reaching an adjustment. The controversy shall be adjusted within twenty-four (24) hours unless the time be extended by mutual consent. In any such meeting of the Arbitration Committee referred to in this Agreement, all parties shall be notified and the hearing and decision, if any, shall be made on the date or dates scheduled.

2. The Arbitration Committee shall consist of four (4) members, two (2) members designated by the Contractors and two (2) members designated by the Tile, Marble and Terrazzo Helpers Subordinate Union No. 45. Should the Arbitration Committee fail to arrive at a majority decision, the Committee will then be required to immediately (within 24 hours, unless extended by mutual agreement in writing) certify the question in dispute to an agreed-upon arbitrator, who will render his decision as promptly as possible. The decision may be rendered orally, in the arbitrator's discretion, and become binding immediatly, to be followed, thereafter, by a written memorandum or written order, depending upon the circumstances.

3. Should the Arbitration Committee arrive at a majority decision on any issue presented to it or upon the Arbitrator making an award, then upon the refusal of either of the offending parties to immediately comply with such decision or award:

    A. In the case where the Employer is the offending party, the Union shall in addition to any and all other remedies available to it, be released from any provision of this Agreement which restricts or delays their right to strike;

and, further, should the Contractor be found to have violated the Agreement of record by the Arbitration Committee or the Arbitrator, the Contractor agrees to pay a sum equal to lost wages in addition to fines, if any, as the Arbitration Committee or the Arbitrator may consider appropriate under the circumstances.

B.   In the case where the Union is the offending party, the Employer shall in addition to any and all other remedies available to him, be released from any provisions of this Agreement which restricts or delays his right to lock out.

C.   The Arbitration Committee and the Arbitrator are vested by the parties with all of the powers in law and equity to issue remedial orders and impose such fines for breaches of the Agreement as in their or his sole discretion are deemed appropriate to the circumstances, including the power to release the Union in the manner and to the extent deemed appropriate by the Arbitrator from any provisions of this Agreement which restricts or delays its right to strike a particular Employer for future violation of this Agreement.

D.   The Tile, Marble and Terrazzo Contractors of Buffalo and the Tile, Marble and Terrazzo Helpers Subordinate Union No. 45 will pay the basic costs of arbitration, and the parties to this Agreement will work out with the Arbitrator a per diem charge which will be borne equally by each party to this Agreement.

E.   The Arbitrator is not vested with power in the area of jurisdictional disputes that would conflict or potentially conflict with the rules and regulations of the Impartial Jurisdictional Disputes Board.  Where, however, assignments of work have been clearly recognized (and there are no conflicting claims for the work by any other Union), then the Arbitrator and the Committee shall have all of the powers herein before set forth.

F.   The majority decisions and order of the Committee and the decision of the Impartial Arbitrator shall be final and binding.

G.   The failure of any party to appear at the hearing of the Committee or the Arbitrator shall not be cause for delay or postponement and the Committee or the Arbitrator shall proceed just as though the absent party were present.

## ARTICLE XII

### Strikes or Lockouts

There shall be no strike or lockouts in the shops or upon the work of the Employers, nor shall the members of this Union collectively leave the work of the Employers.

## ARTICLE XIII

### Union Security

1.   All Employees who are members of the Union on the effective date of this Agreement shall be required to remain members in the Union as a condition of employment during the term of this Agreement.

All Employees shall be required to become or remain members of the Union as a condition of employment from and after the 7th day following the date of employment, or the effective date of this Agreement, whichever is later.

- 13 -

2.  If there be a violation of the foregoing provisions because of failure by an Employee to tender periodic dues and the initiation fee uniformly required by Local Union 8, then upon the request of the Union, the Employer shall terminate the employment of such Employee.

## ARTICLE XIV

### Hiring Procedure

1.  The Employer when requiring Tile, Marble and Terrazzo Helpers shall first employ those Helpers who are on the Employer's Recall List. The recall list will be made up of names of those Helpers having worked for the Employer, plus those additional Helpers employed during the life of this Agreement, as follows:

A.  Those Employees who have worked for a signatory Contractor and have worked a minimum of three thousand (3,000) hours during the 1990-93 contract period, will be included on the Employer's June 1, 1993-94 Recall List.

B.  Commencing in the contract year of June 1, 1994-95, the Employer's Recall List shall be comprised of those Employees who have worked for that signatory Employer a minimum of five hundred (500) hours in the 1993-94 contract year.

C.  Commencing in the contract year of June 1, 1993-96, the Employer's Recall List shall be comprised of those Employees who have worked for that signatory Employer a minimum of five hundred (500) hours in the 1993-94 contract year.

D.  Those members of Local    who are currently employed by a signatory Employer who do not qualify for placement on the Employer's 1993-94 Recall List (as described above in A) shall be allowed to continue their employment with that Employer; however, such Employee shall not be subject to the Employer's 1993-94 Recall List. If such Employee works five hundred (500) hours during the 1993-94 contract year, he will be eligible for the Employer's 1994-95 Recall List. If such employee works five hundred (500) hours in the 1994-95 contract year, he will be eligible for the Employer's 1989-90 Recall List.

2.  Recalls shall also be based on the ability of the Employee to do the available work.

3.  Copies of the Employer's Recall List will be furnished in the Union Office no later than July 1 of each contract year. Should additional men be required beyond those available from the Recall List, the Employer shall so notify the Union and give the Union equal opportunity to refer men.

4.  The Union shall be notified immediately upon the lay-off or the employment of any men who are to work under the jurisdiction of this Agreement.

## ARTICLE XV

### Management of Men

Management of the job and the direction of the working force, including but not limited to the right to hire, suspend or discharge an Employee from duty because of lack of work or other reasons, as well as the determination of the ability of the man to do the available work, is vested exclusively in the Employer.

## ARTICLE XVI

### Contract on Piece Work

No Employer and Helper shall bargain or contract with each other to do a certain piece of work in a designated time. This bargaining or contracting shall be looked upon as piece work which is not countenanced by the organizations signing this Agreement.

## ARTICLE XVII

### Territory

The conditions in this Agreement shall prevail throughout the Union's jurisdiction which includes the city of Buffalo, New York, counties of Erie, Cattaraugus, Niagara, Chautauqua and the western part of Allegheny County from and including Allentown and Belmont to the north county line, the western part of Genesee County from and including Linden and Batavia to the north county line, the western part of Orleans County from and including Shelby and Medina to the north county line, the western part of Wyoming County from and including Warsaw to the north county line, as well as McKean County in Pennsylvania.

## ARTICLE XVIII

### Legality of Agreement

The Employer and the members of Subordinate Union No. 45 the parties hereto, shall be held by and subject to all provisions of this Agreement while it continues in force, and it is further agreed by and between the parties hereto that if any Federal or State Court shall at any time decide that any clause or clauses in this Agreement is or are void or illegal, such decision shall not invalidate the other portions of this Agreement, but any such clause or clauses declared void or illegal by a Federal or State Court shall be stricken out and the remaining portion of this Agreement shall be considered binding bewteen the parties hereto.

## ARTICLE XIX

### Non-Discrimination Clause

No term of this Agreement shall be applied to discriminate against an Employee or an applicant for employment based on considerations of his race, creed, color or national origin. The parties shall comply with applicable Federal and New York State statutes and the orders and regulations issued by administrative agencies of competent jurisdiction to bar said discrimination.

The Union recognizes the obligation of the Employer to comply with Federal and State programs in hiring of minority persons. The Employers may request minority personnel out of order from the "out of work list" to comply with the above Federal and State programs.

## ARTICLE XX

### Notice of Change

Both parties of this Agreement shall be held subject to all provisions herein while it continues in force. Notice of any contemplated changes by either party shall be given in writing by the party contemplating such change or changes at least

ninety days (90) prior to the expiration of this Agreement.  Unless such notice is received within the time herein specified, this Agreement shall be considered binding until a new Agreement is signed.

This Agreement shall remain in full force and effective from June 1, 1993 until May 31, 1996.

It is further mutually agreed that in the event that representative parties to this Agreement are unable to agree upon the terms of renewal of this Agreement no later than one month before the expiration date, that all questions in dispute, except questions of classifications of Trade, shall be submitted to arbitral tribunal for settlement, such tribunal to be selected by the parties signing this Agreement.

In witness, thereto, the parties have caused this Agreement to be signed as of _____ **MAY 14 1993** _____ .

TILE, MARBLE & TERRAZZO
CONTRACTORS OF BUFFALO AND VICINITY

BY:  CONSTRUCTION INDUSTRY
     EMPLOYERS ASSOCIATION, INC.                    UNION

_____                    _____
      James C. Logan                              William R. Wright, Jr.
   Executive Vice President                          Business Manager


. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
                              Company Name

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
                 Duly Authorized Officer or Representative

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
                                  Title

TILE, MARBLE AND TERRAZZO HELPERS SUBORDINATE UNION NO. 8, BUFFALO, NEW YORK

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
                             Business Agent